UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI ANN WARREN,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

CASE NO. 2:13-cv-13523

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff, Lori Ann Warren, alleges that an Administrative Law Judge improperly denied her Social Security disability benefits. Specifically, Plaintiff alleges that the ALJ adopted an inaccurate residual functional capacity that forms the basis of the Vocational Expert's testimony regarding what work Plaintiff is capable of performing. (Doc. 9.) Defendant, Commissioner of Social Security, argues that the ALJ's decision is supported by substantial evidence and that the burden of demonstrating that Plaintiff could perform jobs existing in significant numbers in the local and national economies was met. (Doc. 10.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## II. STATEMENT OF FACTS

On February 22, 2011, Plaintiff filed a Title II claim for a period of disability and disability insurance benefits, alleging a disability onset date of December 14, 2009.  (Tr. 56.)  This claim was initially denied by the state agency on May 20, 2011.  (Tr. 65.)  At Plaintiff's written request, a hearing before ALJ Regina Sobrino was conducted on February 27, 2012.  (Tr. 32.)  Plaintiff appeared at the hearing and testified to the limiting effects of her medical condition.  (Id.)  On April 25, 2012, ALJ Sobrino issued a decision denying Plaintiff's claim.  (Tr. 17.)  This decision became the final decision of the Commissioner when, on June 12, 2013, the Social Security Administration's Appeals Council denied Plaintiff's request for further administrative review.  (Tr. 1.)  The present suit followed.

The ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease and an affective disorder.  (Tr. 22.)  With respect to psychological "B-Criteria," Plaintiff was found to have mild restrictions in activities of daily living; mild restrictions in social functioning; moderate difficulties with concentration, persistence, and pace; and to have experienced no episodes of decompensation.  (Tr. 23.)  The ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [A] range of light work as defined in 20 CFR 404.1567(b), with the following additional limitations: lifting and carrying a maximum of 5 pounds frequently and 10 pounds occasionally, with no pushing or pulling of more than 5 pounds occasionally; no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; no reaching above shoulder level and no more than frequent reaching in other directions; and no exposure to hazards or vibration.  The claimant is limited to simple, routine work.

(Tr. 24.)  In light of this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 26.)  However, based on Vocational Expert ("VE") Stephanee A.

Leech's testimony, the ALJ concluded that Plaintiff remained capable of performing a number of unskilled occupations at both the light and sedentary exertional levels, including receptionist/office clerk and surveillance monitor. (Tr. 27.)

Plaintiff alleges in her Function Report that she is able to lift ten to fifteen pounds; can bend, stand, and walk for short periods of time; is not able to reach; can kneel on occasion; can climb two flights of stairs; and can maintain attention for half hour periods of time. (Tr. 156.) She states that pushing and pulling irritate her neck and that her cervical spine nerve irritation causes muscle weakness in her right arm and fingers. (Tr. 151.) Her reported activities of daily living include light dusting, washing dishes, daily shopping, attending doctor appointments, and caring for her dog. (Tr. 152.) She reports difficulty with dressing and personal care to the extent that they require bending her neck and raising her arms. (Id.)

The medical evidence supports Plaintiff's allegation that she began to suffer from her impairment in late 2009. An MRI of the cervical spine dated October 10, 2009, demonstrated multilevel spondylotic changes, greatest at C5-C6, with mild ventral impression on the thecal sac and moderate to marked bilateral foraminal narrowing. (Tr. 202.) At a visit to her primary care physician, Dirk Snyder, M.D., on November 16, 2009, Plaintiff was diagnosed with arthritis and sprain of the head and neck, resulting in moderately reduced flexion and extension of the neck and decreased right arm strength. (Tr. 245.) Dr. Snyder found that this condition prevented her from working and provided her a written excuse from work until her scheduled surgery. (Id.)

On January 15, 2010, Plaintiff underwent a corpectomy and four-level cervical fusion surgery, performed by Avery Jackson, III, M.D., for her chronic neck pain,

degenerative disc disease, segmental instability, and cervical kyphotic angulation deformity. (Tr. 173.) On March 23, 2011, Plaintiff's MRI revealed post-surgical changes in the fusion surgery. (Tr. 203.) Specifically, Richard Kovan, M.D., observed loosening of the screws of a side plate and anterior shift of the side plate. (Tr. 255.) Plaintiff related to her doctors that she did not experience significant improvement after surgery. (Id.; Tr. 328.) In fact, on December 7, 2010, Dr. Snyder determined that Plaintiff's head and neck movement was severely restricted in all directions. (Tr. 224.) On December 20, 2010, Dr. Kovan noted that pre- and post-operative epidural spinal injections provided her no benefit, while physical therapy had provided only minimal benefit. (Tr. 264.) At that time, however, Plaintiff was taking only over-the-counter NSAIDs for pain relief. (Id.) Dr. Kovan also observed reduced cervical range of motion but full active range of motion in bilateral upper extremities. (Tr. 265.)

On April 27, 2011, Plaintiff sought an opinion from Vivakanand Palavali, M.D., after another doctor advised her to undergo a second surgery in order to revise the cervical plate. (Tr. 328.) Plaintiff denied radiating arm pain and trouble walking, but complained of numbness and weakness in her right hand. (Id.) She also denied taking pain medication at that time. (Id.) Dr. Palavali observed limited range of motion of the neck in all directions but full upper extremity strength. (Id.) He also noted decreased sensation over the right hand, but normal strength, sensation, and gait in lower extremities. (Id.) Upon reviewing cervical x-rays and a CT scan, Dr. Palavali recommended that Dr. Jackson perform surgery if Plaintiff's pain became bad enough. (Tr. 332.)

4

Plaintiff visited D.V. Pasupuleti, M.D., for a neurology consult on July 13, 2011, and underwent an EMG study. (Tr. 341-42.) Dr. Pasupuleti reported abnormal results showing electroneuromyographic evidence in the right upper extremity, as well as chronic, mild cervical paraspinal denervation. (Id.) He opined that such findings are typical in conditions such as degenerative joint and disc disease. (Tr. 342) Dr. Pasupuleti further noted the absence of superimposed mononeuropathy, such as carpal tunnel syndrome, or polyneuropathy. (Id.)

On August 25, 2011, Dr. Snyder provided a Medical Statement outlining Plaintiff's physical restrictions. According to Dr. Snyder, Plaintiff suffers from degenerative disc disease, cervicalgia, and radiculopathy. (Tr. 405.) These conditions indefinitely prevent Plaintiff from lifting, pushing, or pulling in excess of twenty pounds. (Id.) Further, Dr. Snyder states that Plaintiff is precluded from performing her prior work. (Id.)

With respect to Plaintiff's psychological impairments, the record indicates that she suffers from an affective disorder, for which she takes prescription medication. (Tr. 240, 255, 265.) While Plaintiff does not appear to visit a therapist or mental health professional, her primary care doctors have indicated improvement and stability of her anxiety and mood with medication. (See id.) Based on his review of the record, state agency medical expert Ashok Kaul, M.D., determined that Plaintiff suffers from severe impairments of affective and anxiety disorders but that her "B-Criteria" limitations were all mild. (Tr. 61.)

### III.     STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

## IV.   DISCUSSION

### A. Residual Functional Capacity

The record demonstrates that the RFC is based on and supported by substantial evidence. The ALJ identified and discussed Plaintiff's treating physicians' office visit notes, observations made during examinations, and medical opinions. (See Tr. 25-26.) Moreover, the ALJ accorded significant weight to the opinions of Drs. Snyder, Palavali, and Kovan. (Id.) In the absence of state agency medical expert opinion, the ALJ relied exclusively on the physical restrictions recommended by these treating physicians and communicated by Plaintiff. The ALJ's analysis was therefore consistent with regulations requiring that the findings of a treating physician as to the nature and severity of an impairment be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." See 20 C.F.R. § 404.1527(c)(2). Additionally, as argued by Defendant, Plaintiff has not identified what medical opinions the decision fails to address.

The only medical source to provide an RFC recommendation was Dr. Snyder. As discussed in the decision, Dr. Snyder found Plaintiff capable of lifting, pushing, and pulling no more than twenty pounds, with no limitations on sitting, standing, or walking. (Tr. 405.) The decision also discussed Dr. Palavali's evaluation, which noted limited range of motion in the neck, normal gait, and unremarkable upper extremities with full (5/5) strength. (Tr. 328.) Dr. Kovan's examination, though not fully detailed in the decision, is consistent with Dr. Palavali's – Dr. Kovan found decreased range of motion in the neck, full active range of motion and normal strength in both upper extremities, and no muscle atrophy. (Tr. 265.)

7

The RFC adopted by the ALJ is significantly more restrictive than Dr. Snyder's recommendation. It limits Plaintiff to lifting, pushing, and pulling a maximum of five to ten pounds occasionally. Additionally, the decision and RFC take into account Plaintiff's decreased range of motion in her neck by restricting her to no reaching above shoulder level and no more than frequent reaching in other directions. While the decision acknowledges that the cervical plate has shifted since Plaintiff's original surgery, it recognizes that she has not elected to undergo a second surgery as recommended by Dr. Kovan. (Tr. 25.) Furthermore, the decision mentions that Plaintiff has managed her pain largely with over-the-counter medicine and minimal prescription medication. (See Tr. 26.) In light of the medical reports discussed above, the physical portion of the RFC is supported by substantial evidence.

Plaintiff argues that the ALJ's credibility and RFC determinations were erroneously premised on Plaintiff's reported activities of daily living. The decision discusses the activities of daily living and physical limitations described by Plaintiff in her Function Report. The ALJ found these allegations to be "not fully credible because they are not fully supported by objective medical evidence." (Tr. 25.) Indeed, this credibility determination was based on an analysis of the medical evidence, as discussed above. The ALJ considered Plaintiff's activities of daily living only insofar as to make "B-Criteria" findings. (Tr. 23.) Accordingly, Plaintiff's argument is unavailing.

Plaintiff also contends that a limitation to simple, routine work was improper. To the contrary, such a non-exertional limitation is consistent with the "B Criteria" finding that Plaintiff has moderate impairment in concentration, persistence, and pace, resulting from her affective disorder. This limitation is also consistent with Plaintiff's Function

Report, alleging difficulties with concentration. (Tr. 156.) Therefore, the mental aspects of the RFC are also supported by substantial evidence.

### B. Step Five Analysis

Once it is determined that Plaintiff lacks the capacity to perform past relevant work, the burden of proof shifts to the Commissioner to show that Plaintiff is capable of performing other substantial gainful activity existing in the national economy. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). To satisfy this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." Id. (quoting O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir. 1978). Substantial evidence may consist of VE testimony in response to a "hypothetical" question only if this question accurately portrays the plaintiff's physical and mental impairments. Id.

In the present case, it was determined that Plaintiff lacked the physical capacity to perform any of her past relevant work. (Tr. 26.) Therefore, according to Varley, Defendant carries the burden of showing that Plaintiff is capable of performing other work. See 820 F.2d at 779. At the hearing, the hypothetical posed to the VE mirrors the RFC but includes the following additional limitations: occasional balancing; frequent handling, fingering, and feeling; and no need to drive as a work duty. (Tr. 49.) Therefore, as the RFC is supported by substantial evidence per the foregoing discussion, the hypothetical is likewise supported. Additionally, this more restrictive hypothetical is more favorable to the Plaintiff.

The VE testified that an individual with the foregoing restrictions would be capable of performing a number of jobs at the sedentary exertional level, such as

unskilled office clerk, reception/information clerk, surveillance systems monitor, packer, and assembler. (Tr. 49-50.) Additionally, the VE identified a number of positions at the light exertional level compatible with the hypothetical. (Tr. 51.) In response to further questioning regarding the degree of neck movement these jobs involved, the VE responded that the reception /information clerk position would involve predominantly neutral neck positioning, with very occasional flexion. (Tr. 50.) Because the hypothetical accurately portrays Plaintiff's physical impairments, the ALJ was justified in relying on this testimony as substantial evidence.

Plaintiff objects that the hypothetical did not sufficiently take into account her testimony regarding difficulties with neck movement, sitting, standing, and walking. As described above, the ALJ questioned the VE regarding the degree of neck movement required and identified at least one position involving predominantly neutral neck positioning. Therefore, this concern was amply taken into account in the Step Five analysis. With respect to Plaintiff's testimony, she stated that she is unable to lift at all with her right hand, can lift only five to ten pounds with her left hand, cannot push with either arm, can sit or stand for fifteen minutes at a time, and can walk two to four blocks. (Tr. 37-39.) While the decision does not specifically address and resolve these allegations, this lapse is ultimately inconsequential because the medical evidence nonetheless supports the ALJ's findings. See Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 654 (6th Cir. 2009) (finding that remand is unnecessary for harmless error). Accordingly, the ALJ's Step Five analysis identifying jobs that Plaintiff would be capable of performing is proper and supported by substantial evidence.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:	July 28, 2014	s/Marianne O. Battani
	MARIANNE O. BATTANI
	United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 28, 2014.

	s/ Kay Doaks
	Case Manager